IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>[1] AYENDY DE JESUS,<br><br>**Defendant.** | CRIM. NO. 22-197-1 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the *Motion to Suppress* ("*Motion*") filed by Defendant Ayendy De Jesus ("De Jesus"). (Docket No. 110). Having also reviewed the United States of America's (the "Government") *Response* and the Defendant's *Reply* (Dockets Nos. 122 and 126, respectively), the Court **DENIES** Defendant's *Motion*.

I.   FACTUAL BACKGROUND[1]

On April 22, 2022, at approximately 11:45 PM, the crew of a Puerto Rico Police Bureau ("PRPB") patrol boat spotted a vessel on its radar while on a routine patrol near Bahia Salinas, Cabo Rojo. The vessel, described as a twenty to twenty-two foot long *yola*-style[2] boat with one outboard motor, approached the shoreline at low speed and had no visible navigation lights. Using night-vision

---

[1] The facts in this section are derived from the *Affidavit* supporting the criminal *Complaint*, the *Motion*, responsive filings thereto, and their exhibits.

[2] A *yola* is a "small open skiff propelled by oars or an outboard motor." United States v. Trinidad, 839 F.3d 112, 120 (1st Cir. 2016) (Torruella, J., dissenting).

goggles, PRPB officers observed two individuals onboard the *yola*. Although the PRPB officers turned on the patrol boat's lights and loudhailer, announced its presence, shined a flashlight on the boat, and attempted to conduct a vessel stop, the captain of the *yola* accelerated, evaded the PRPB, and grounded his vessel near the shoreline.

Both the *yola*'s occupants abandoned it, and law enforcement did not immediately apprehend them. One of the PRPB officers shined his flashlight on the occupants and observed that one was wearing a dark-colored shirt and the other a white-colored shirt.

The PRPB maintained surveillance of the *yola* and later ungrounded it and towed it to a PRPB station. At about 2:20 AM on April 23, 2022, agents inspected the *yola* and discovered approximately 214 kilograms of cocaine packaged in 181 bricks and 9 burlap sacks. They also discovered a white piece of paper containing various coordinates corresponding to a known drug smuggling route from the Dominican Republic to Puerto Rico. The final stop on the route was labeled "Casa" and maps to an address near the Ruinas del Faro de Guánica, or the ruins of the Guánica lighthouse. Agents also found two Global Positioning System ("GPS") devices, one of which revealed waypoints in Higüey, a city in the Dominican Republic. Additionally, the *yola* contained food

and drink products labeled with "República Dominicana," or the Dominican Republic.

In the morning of April 23, 2022, the PRPB received a tip that a disheveled, dehydrated individual was walking near the area of Finca Higuaca in Pitahaya, Puerto Rico, and asking for a telephone to make a phone call. Two PRPB agents arrived in the area, which is approximately four to five miles away from where the *yola* was grounded, to find Mr. De Jesus attempting to make a phone call while on the curtilage of a property (the "Residence") owned by a private citizen, Pedro Padilla-Garcia ("Padilla-Garcia"). At the time, Defendant was wearing a black polo shirt that had two horizontal stripes: one cobalt blue and the other, white. He stated he was an undocumented migrant from Higüey, in the Dominican Republic; that he had no immigration documents that would enable him to remain in the United States legally; that he and another individual were involved in a law enforcement interdiction the previous night; and that he believed he was currently in Guánica, Puerto Rico. Mr. De Jesus was detained and later transported to a U.S. Border Patrol Station where he made post-arrest inculpatory statements.

Law enforcement agents also conducted an interview of Mr. Padilla-Garcia on May 5, 2022. Defendant had asked Mr. Padilla-Garcia for help and stated that he was a Dominican national who

had just arrived on an illegal smuggling venture. Defendant had also stated that he was in Guánica, then asked for a phone to make a call to be picked up. Mr. Padilla-Garcia lent Mr. De Jesus a phone, from which Defendant removed the SIM card to insert his own SIM card. Defendant never made the call because soon after, two police officers arrived and detained the Defendant.

## II. PROCEDURAL BACKGROUND

On May 5, 2022, after Mr. De Jesus had been arrested pursuant to a criminal *Complaint*, the Grand Jury returned a four-count Indictment charging him and his co-defendant, Bernardino De Jesus-De La Rosa, with conspiracy to import five kilograms or more of cocaine in violation of 21 U.S.C. §§ 952(a) and 963 (Count One); importation of five kilograms or more of cocaine, aiding and abetting, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2 (Count Two); conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count Three); and possession with intent to distribute five kilograms or more of cocaine, aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Four). (Docket No. 11).

On February 10, 2024, the Defendant filed his *Motion*. (Docket No. 110). In it, he avers that PRPB officers had no probable cause to arrest him, and therefore all evidence of drugs seized on April

22, 2022, all evidence from his arrest, and all his post-arrest statements from April 23, 2022, must be suppressed. Id. at 7-8. He also requests a hearing for the purposes of argument. Id. Finally, Mr. De Jesus submits a half-page affidavit to support his *Motion*. (Docket No. 110-1).

In response, the Government first contends that an evidentiary hearing is not warranted. (Docket No. 122 at 6-7). Furthermore, it avers that Defendant cannot establish he had an expectation of privacy in the Residence, and that there is an exception to the warrant requirement because the PRPB officers were engaging in community caretaking functions. Id. at 9-13. Finally, the Government alleges that the PRPB officers had reasonable suspicion to stop the Defendant, that they then developed probable cause to arrest him, and that they obtained statements from him lawfully. Id. at 13-17.[3]

Mr. De Jesus subsequently filed a *Reply*. (Docket No. 126).

### III. ANALYSIS

**A. No hearing is warranted**

Defendant moves for a "hearing for argument" but does not articulate why a hearing is necessary. (Docket No. 110 at 8). The

---

[3] The Government appended certain reports in the Spanish language as exhibits to the *Response*, but it has not submitted English translations of the same. *See* L. Civ. R. 5(c) (requiring translations of filed documents), L. Crim. R. 112 (extending Local Rule 5 to criminal cases). Thus, the Court only considers the law enforcement reports in English for the purposes of this Opinion and Order.

Government, in turn, construes Mr. De Jesus' request as one for an evidentiary hearing. (Docket No. 122 at 6-8).

Regarding Defendant's request for oral argument, "district courts have considerable discretion in deciding whether or not to allow oral argument on a [] motion." Jones v. Secord, 684 F.3d 1, 7 (1st Cir. 2012) (citation and internal quotation marks omitted); *see also* Jensen v. Phillips Screw Co., 546 F.3d 59, 68 (1st Cir. 2008) ("Whether to entertain oral argument and/or convene an evidentiary hearing remains within the informed discretion of the district court."). Moreover, L. Civ. R. 7(h) squarely places the granting of oral argument within the discretion of the Court: it notes that the Court "may" grant oral argument and "[o]therwise, the motion will be decided on the written record." L. Civ. R. 7(h); *see also* L. Crim. R. 112 (extending L. Civ. R. 7 to criminal cases). Given that Defendant has had an opportunity to fully present his position and brief the issues, he is unlikely to be prejudiced by the denial of oral argument. *See* United States v. Sampson, 2015 WL 13333677, at *2 (D. Mass 2015).

To the extent Mr. De Jesus requests a hearing to present evidentiary matters, the Court notes that there is "no presumptive right to an evidentiary hearing on a motion to suppress." United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013) (citations omitted). Generally, evidentiary hearings are only required "**if**

**the movant makes a sufficient threshold showing that material facts are in doubt or dispute**, and that such facts cannot reliably be resolved on a paper record." Id. (quoting United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013)) (emphasis added). "Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." Id.

Specifically, it is the defendant's burden to "allege facts, 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" United States v. Calderón, 77 F.3d 6, 9 (1st Cir. 1996) (quoting United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994)). A court may choose not to hold an evidentiary hearing when a defendant offers no affidavits or other evidence in support of his motion to suppress. Calderón, 77 F.3d at 9. Defendants seeking an evidentiary hearing must do more than recite "conclusory prognostications and perfervid rhetoric." United States v. Staula, 80 F.3d 596, 604-04 (1st Cir. 1996) (citation and internal quotation marks omitted) (affirming denial of evidentiary hearing request when defendant's "affidavit contain[ed] no facts that contradict[ed] the officer's direct statement.")

In this case, Mr. De Jesus submitted a bare-bones affidavit to his *Motion*. (Docket No. 110-1). As relevant to the *Motion*, the

Criminal No. 22-197-1 RAM)                                                                 8

Defendant states in his affidavit that on April 23, 2022, he (1) "was inside the premises of a private property allowed and consented by the owner Mr. Pedro Padilla, talking to him without violating any laws;" (2) that "[a]s I was talking to Mr. Padilla, the police entered the property and arrested me;" and (3) "[a]t no point did Mr. Padilla called [sic] the police, while I was talking to him or asked me to vacate the premises." Id. These three sentences are conclusory and do not place any material facts in issue. See United States v. James, 834 F. Supp. 2d 1, 3 (D. Mass 2011) ("A defendant's affidavit alone, even if one is submitted, is not cause for an evidentiary hearing if it contains conclusory allegations and makes no offer of proof with respect to any other facts that might support these allegations."). Rather, the disputes between the parties center on questions of law about Mr. De Jesus' arrest. Because these questions can be resolved on the paper record, Defendant cannot meet his burden to show why an evidentiary hearing is warranted.

Thus, Defendant's request for a hearing on the *Motion* is **DENIED**.

 **B. Defendant advances no reason for suppression of the narcotics evidence**

Mr. De Jesus requests that all evidence of drugs seized from the *yola* on April 22, 2022, be suppressed. However, in

contravention of L. Crim. R. 147(a), Defendant cites no authority to support this prong of his *Motion*. Much of the *Motion* centers on whether there was probable cause to arrest Mr. De Jesus. However, the factual information included in his *Motion*, as well as the reports attached to the Government's *Response*, show that the seizure of the *yola* late in the evening of April 22, 2022, and the search of the boat early in the morning of April 23, 2022, actually predated the PRPB's encounter with and arrest of Mr. De Jesus.

Although not raised by the parties, the doctrine of abandonment applies to the facts of this case. "It is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property." United States v. Soto-Beniquez, 356 F.3d 1, 36 (1st Cir. 2003); *see also* Lewis, 40 F.3d at 1334 (noting the Fourth Amendment is not implicated in abandonment cases because the property "is not the fruit of an illegal search and seizure."). When a defendant flees on foot after a maritime pursuit, he has abandoned the vessel. *Cf.* United States v. Bailey, 2009 WL 524730, at *2 (D. Mass. 2009) (collecting cases on vehicular context). In California v. Hodari D., the Supreme Court held that cocaine abandoned by a defendant who fled after a police officer's pursuit or "show of authority" was not the fruit of a

Criminal No. 22-197-1 RAM)                                                    10

seizure and was therefore admissible. 499 U.S. 621, 629 (1991). Those facts parallel what undisputedly occurred in this case.

For the purposes of ruling on the pending *Motion*, the Court assumes without deciding that the PRPB put on a show of authority when it attempted to conduct a vessel stop on the night of April 22, 2022. The uncontested facts are that the crew of the PRPB vessel turned on its lights, used its loudhailer, and announced a police presence. The two occupants of the *yola* evaded the PRPB, grounded the boat, and then fled on foot, leaving the vessel and its contents—including contraband—behind. Accordingly, there was no reasonable expectation of privacy in the contents of the *yola*, which included approximately 214 kilograms of cocaine that Defendant now seeks to suppress. Thus, his request to suppress the evidence of the seized drugs is **DENIED**.

**C. There was probable cause for Defendant's arrest**

Mr. De Jesus contends that there was no probable cause to arrest him on April 23, 2022, and therefore seeks to suppress any statements[4] he made to Task Force Officer Omar Villarubia ("TFO Villarubia") while detained or any evidence from his arrest.[5]

---

[4] No dispute regarding the application of *Miranda v. Arizona*, 384 U.S. 436 (1966), has been raised, much less supported by Defendant's affidavit.

[5] The Defendant does not specify what evidence obtained from his arrest he wishes to be suppressed. The Court notes that a report attached to the Government's *Response* indicates that law enforcement seized a Maxwest flip-phone and CLARO SIM card from Mr. De Jesus. (Docket No. 122-1 at 5).

Defendant appears to present two main arguments as to why no probable cause for arrest existed. First, he posits that it would have been unreasonable for law enforcement to conclude that he was the individual that fled from the *yola* based on his dark-colored shirt and the tip about a dehydrated, disheveled individual asking for a telephone in the area of Finca Higuaca. (Docket No. 110 at 7-8). Second, he emphasizes that he was within the curtilage of a private residence, with the consent of its owner. Id. at 8. Mr. De Jesus does not explain why the curtilage issue is important, but he rebuffs the Government's interpretation that it could be relevant to the issue of standing. (Docket No. 125 ¶ 3). From his *Reply*, it appears that Defendant alleges that when law enforcement approached Mr. Padilla-Garcia's residence, they would not have been able to perceive facts to support probable cause from their vantage point on the public road. Id. ¶ 8.

The Fourth Amendment establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Arrests are seizures of persons and must be reasonable under the

---

Additionally, the parties do not aver that the digital data of the cell phone was searched without a warrant. See Riley v. California, 573 U.S. 373, 386 (2014) (holding that officers must generally secure a warrant before searching a cell phone, even if it was obtained pursuant to a search incident to an arrest). Without further briefing regarding this issue, the Court assumes that Defendant seeks to suppress the physical evidence related to the cell phone and SIM card.

Criminal No. 22-197-1 RAM)                                                                 12

circumstances. *See* Payton v. New York, 445 U.S. 573, 585 (1980). A warrantless arrest is reasonable under the Fourth Amendment if an officer has probable cause to believe that a crime was committed in his presence. Atwater v. Lago Vista, 532 U.S. 318, 354 (2001). "[P]robable cause exists when an officer, acting upon apparently trustworthy information, reasonably can conclude that a crime has been . . . committed and that the suspect is implicated in its commission." United States v. Flores, 888 F.3d 537, 543 (1st Cir. 2018) (quoting Morelli v. Webster, 552 F.3d 12, 21 (1st Cir. 2009)).

Probable cause is assessed based on the totality of the circumstances known to the officers at the time of the arrest. French v. Merrill, 15 F.4th 116, 125 (1st Cir. 2021) (citing Flores, 888 F.3d at 544)). It is a "fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 243-44. In other words, probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014). The Government bears the burden of establishing probable cause. *See* United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997) (citations omitted).

In the very early morning of April 23, 2022, the PRPB was aware of the following information: The *yola* contained evidence that it had originated in the Dominican Republic, and it carried a GPS device with waypoints showing a route from Higüey to Guánica. Law enforcement authorities also knew one of the occupants of the boat was wearing a dark-colored shirt, and that he had fled the landing site on foot. Several hours later, and within twelve hours of the original interdiction, agents received a tip that a disheveled, dehydrated individual was walking near Finca Higuaca, located in Pitahaya, Puerto Rico, no greater than five miles from where the *yola* was grounded. *See* United States v. Centeno-González, 989 F.3d 36, 46 (1st Cir. 2021) (noting temporal and geographic proximity contribute to finding of probable cause).

When PRPB agents went to Pitahaya, they arrived at the Residence of Mr. Padilla-Garcia.[6] As indicated by the photos the Government appended to its *Response*, there is a clear view of the Residence's porch from the public street. The fence separating the street from the property is made of vertical posts and horizontal strings of wire, and it does not create a visual barrier. The Government also avers, and the Defendant does not dispute, that

---

[6] In his *Motion*, Mr. De Jesus states without support that Finca Higuaca is far from where he was arrested. (Docket No. 110 at 8). However, it appears from the Government's *Response* that Finca Higuaca is an area containing a small set of spread-out residences, of which Mr. Padilla-Garcia's Residence—where Defendant was arrested—was one. (Docket No. 122 at 12).

the gate to the property was open at the time that law enforcement arrived. (Docket No. 122 at 12). Thus, it would have been permissible for the officers to walk toward the Residence to conduct what is known as a "knock and talk." *See* Florida v. Jardines, 569 U.S. 1, 8 (2013) ("[A] police officer not armed with a warrant may approach a home and knock."); *see also* United States v. Smith, 919 F.3d 1, 6 n.2 (1st Cir. 2019) (noting that the knock-and-talk rule allows law enforcement to enter private land to gather information in an investigation and citing Young v. Borders, 850 F.3d 1274, 1284 (11th Cir. 2017)).

Upon approaching the Residence,[7] the PRPB agents saw Mr. De Jesus on the porch or curtilage of the property[8] attempting to make a phone call. At the time, he was wearing a black polo with one cobalt blue stripe and one white stripe. Defendant's appearance at the time of his arrest is not inconsistent with the description of one of the *yola*'s occupants wearing a dark-colored shirt. Even if the difference in descriptions was meaningful—which it is not—it would not have undermined a finding of probable cause based on the

---

[7] In his *Motion*, Defendant alleges that the agents had their weapons drawn upon entering the curtilage of the Residence. (Docket No. 110 ¶ 16). However, this detail is not mentioned in Mr. De Jesus' affidavit nor otherwise supported, and therefore plays no part in the Court's analysis here.

[8] Similarly, Defendant claims in his *Reply* without any offer of evidence that PRPB officers entered Mr. Padilla-Garcia's house. (Docket No. 126 ¶ 4). However, his own *Motion* states that he was encountered within the curtilage of the Residence. *See, e.g.*, (Docket No. 110 ¶ 16).

Criminal No. 22-197-1 RAM)                                              15

totality of the circumstances. *Cf.* United States v. Mohamed, 630 F.3d 1, 5 (1st Cir. 2010) (concluding there was reasonable suspicion to stop a suspect wearing a hooded top and jeans when officer thought he was wearing shorts and a tee shirt, despite discrepancy in clothing description).

At this point, the information submitted by the parties does not indicate if PRPB agents asked basic identifying questions[9] of Mr. De Jesus or if he *sua sponte* provided information to the arriving officers, although the Government claims in its *Response* that Defendant "immediately made admissions" as to his lack of legal status in Puerto Rico and his involvement in the interdiction the night before. (Docket No. 122 at 16). The Court further notes that the Defendant does not address these statements in his *Motion* or *Reply*-not even to provide a timeline of events. Thus, the Court assumes for the purposes of this Opinion and Order that the inculpatory statements made by Mr. De Jesus at the Residence precede his arrest by PRPB officers.

Defendant's statements made at this juncture would **alone** establish probable cause for two different offenses. *See* Bizier, 111 F.3d at 218 ("The probable cause justifying a lawful custodial

---

[9] Law enforcement officers may, without any suspicion whatsoever, "generally ask questions . . . [and] ask to examine [an] individual's identification . . . as long as the police do not convey a message that compliance with their requests is required." United States v. Tanguay, 918 F.3d 1, 5 (1st Cir. 2019) (citing Florida v. Bostick, 501 U.S. 429, 434-35 (1991)).

Criminal No. 22-197-1 RAM)                                                      16

arrest . . . need not be for the charge eventually prosecuted."); United States v. Mercedes De La Cruz, 252 F. Supp. 3d 116, 122 (D.P.R. 2017) (finding probable cause to arrest where defendant had admitted his participation in an ongoing crime, among other indicia). Additionally, Mr. De Jesus also stated he thought he was in Guánica, when in fact he was in Pitahaya. This comment linked him to the piece of paper found in the *yola* with coordinates originating from the Dominican Republic and ending at a location in Guánica. Combined with Defendant's location four to five miles from the interdiction location the morning after, his dark-colored shirt, and his request to borrow a phone, his admissions to PRPB officers more than sufficed to establish probable cause that he had committed immigration and drug trafficking crimes.

Accordingly, Defendant's requests to suppress his post-arrest statements to TFO Villarubia and the evidence seized from him during his arrest are **DENIED**.

### IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's *Motion to Suppress* at Docket No. 110 is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of May 2024.

                                        s/Raúl M. Arias-Marxuach
                                        UNITED STATES DISTRICT JUDGE